IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

**FILED**

11:47 am, 9/11/20

**U.S. Magistrate Judge**

SARAH MOUNTAIN,

               Plaintiff,

vs.

UNITED STATES

               Defendant.

Case No:  19-CV-005-J

---

## ORDER ON DEFENDANT'S EVIDENTARY MOTIONS

      This matter comes before this Court upon Defendant's seven evidentiary motions [Docs. 43-49]. Defendant's seven motions are addressed in this single order due to the similarities of the motions and the arguments presented by the parties.

### BACKGROUND

      This case alleges the medical negligence of Defendant in its treatment of Plaintiff. On April 27, 2016 Plaintiff was driving to work at the Community Health Center of Central Wyoming, (CHCCW)[1], where she was employed as a hygienist at the dental clinic, when she began to experience significant health symptoms, including nausea, dizziness, headache and distorted vision. Plaintiff could not exit her vehicle and at 8:37 a.m. she was assisted into CHCCW's Quick Care clinic by fellow employees, where she was seen by a

---

[1] CHCCW is deemed an employee of the United States under the Federally Supported Health Centers Assistance Act, 42 USC §233(g)(1)(A).

nurse practitioner, Mr. Snyder. The Plaintiff remained at the Quick Care clinic for many hours. Mr. Snyder diagnosed Plaintiff with vertigo and referred her to Windy City Physical Therapy. Plaintiff refused and requested to be transferred to the Wyoming Medical Center emergency room. She was transported by ambulance and arrived at the Wyoming Medical Center at 2:20 p.m. At the Wyoming Medical Center, it was quickly determined that Plaintiff had suffered a stroke and she was seen by Dr. Alana Cozier. Plaintiff was beyond the time frame for treatment with Tissue Plasminogen Activator (tPA), but the doctor ordered a CT scan in the hope that due to Plaintiff's young age she might still be suitable for tPA treatment. The CT scan showed a complete infarct in Plaintiff's left cerebellar hemisphere and it was determined that she was no longer suitable for administration of tPA.

The focus of these motions goes to the parties' substantial dispute regarding causation. Plaintiff contends that the negligence of Defendant deprived her from the benefits of tPA which would have resulted in little or no disability. Defendant contends that the lack of administration of tPA does not satisfy the legal requirement of causation and as such Plaintiff's claims fail. These pending motions address the relevant contested issue of the potential efficacy of the tPA treatment for the Plaintiff had it been administered in a timely basis.

## LAW AND FINDINGS

### 1. Meet and Confer

This Court's Local Rule 7.1(b)(1)(A) requires the parties to meet and confer in a good faith effort to resolve the dispute prior to the filing of any non-dispositive motion.

The Plaintiff has asserted in a number of its responsive pleadings that Defendant failed to do so. *See* Documents 61, 62 and 67. In addition there is no statement by Defendant that there was an effort to meet and confer prior to the filing of any of these motions as required by the Local Rule and Defendant did not address the meet and confer requirement in any of its reply briefs. As will be seen below, these motions are in part based upon Defendant's claim that Plaintiff did not follow the rules. The rules are designed to aid the procedural process of moving a case through discovery to trial in an efficient and fair manner. This Court, as in this manner, is faced with attempting to enforce those rules in a manner which does not allow gamesmanship to defeat the cause of justice. A case should be decided on its merits, not on procedural technicalities. Nevertheless, the Court cannot allow the rules to be flaunted by either side. This Court could refuse to consider these motions for failure to comply with the meet and confer requirement. But, to do so will only delay the process and potentially adversely impact the timely resolution the litigants are entitled to. This Court will address the pending motions with yet another strong caution as to the importance of the meet and confer process. It appears that the process could have resolved at least one of these motions.

**2. Federal Rule of Evidence 702 & *Daubert***

Defendant submitted three motions seeking to strike the expert testimony of expert witnesses designated by Plaintiff [Docs. 43, 44 & 45]. The primary focus of Defendant's motions are that the experts should not be allowed to testify as their testimonies do not qualify under the requirements of Federal Rule of Evidence 702, *Daubert v. Merrell Dow Pharmaceuticals. Inc.*, 509 U.S. 579 (1993), and its progeny. When expert testimony is

so challenged the court must assess the admissibility using a two-step analysis. The court must first determine if the expert is qualified by "knowledge, skill, experience, training, or education" to render an expert opinion. Fed. R. Evid. 702. If so qualified, the court must then assess whether the opinions are reliable under *Daubert* and *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137 (1999). The parties do not appear to contest that these three experts, Dr. Lobatz, Dr. Barr, and Dr. Cozier are qualified. They are all board certified in their area of medical practice. Defendant is instead focused on the reliability of the testimony.

Regarding methodology and procedures under *Daubert,* a court is to find an expert opinion reliable under Rule 702 if the opinion is based on "good grounds." *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 743 (3d Cir.1994). Meaning that, if the opinions are based on methods and procedures of science, they can be admissible regardless of whether the court thinks the opinions are correct. *Id.* The court's focus "must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 744 (citing *Daubert,* 509 U.S. at 595).

This Court's analysis of Defendant's *Daubert* objections differs when the matter is to be tried to the court and not a jury. The typical concern that unreliable expert testimony will be presented to a jury are absent for a bench trial. *Attorney General of Oklahoma v. Tyson Foods, Inc.*, 565 F.3d 769, 779 (10th Cir. 2009). *Daubert's* primary purpose is to protect juries from unreliable or confusing scientific testimony, and these concerns are significantly lessened in a bench trial. Thus, trial courts conducting bench trials have the flexibility to admit proffered expert testimony and to then decide during trial whether the

evidence meets the requirements of *Daubert* and Rule 702. *Morris v. United States*, 2010 WL 8848636. The trial judge is fully capable of sorting the wheat from the chaff at trial. With this in mind. Defendant's individual motions will be addressed.

### a. Dr. Lobatz [Docs. 43, 63 & 79]

Dr. Lobatz is a board-certified neurologist who has practiced, taught, and performed research in the field of neurology and strokes.   Dr. Lobatz has been retained to "…offer opinions, generally, on the timing and development of Ms. Mountain's strokes, the potential window in which tPA could have been effectively administered, the diagnosis and prognosis for Ms. Mountain, and the (sic) how the delay in a timely referral to the hospital caused Ms. Mountain's permanent injuries." [Doc. 20 p.2].   Plaintiff presented a 21-page report which included Dr. Lobatz's qualifications, document sources, findings of his examination of Plaintiff, and summary of his opinions with citations to references supporting his conclusions.   Attached to his report are over 140 pages of documentation, including copies of research reports supporting his findings.   Defendant challenges Dr. Lobatz's opinions regarding the efficacy of prompt treatment with tPA, asserting that his opinions are conclusory and without methodology.   Defendant rather seeks to rely upon a 1995 study which Defendant asserts shows only 11 to 13% of patients treated with tPA had "minimal or no disability at three months" as compared to those who did not receive the treatment. *Tissue Plasminogen Activator for Acute Ischemic Stroke*, 333 New Eng. J. of Med. 1581 (1995) [Doc. 28-2].   Defendant asserts that Dr. Lobatz does not provide any authorities and that his opinions are in conflict with the above study, which is commonly referred to as the "NINDS" report.   More specifically, Defendant

asserts that Dr. Lobatz cannot support his contention that the Plaintiff would have benefitted from timely treatment with tPA to a level of legal causation.

The NINDS report forms the basis of each of the *Daubert* objections. Defendant asserts that the NINDS report is the gold standard as a result of its double-blind methodology, which is recognized as the most authoritative medical trial process. This 1995 report was the basis of the FDA's acceptance of tPA for the treatment of stroke patients and Dr. Lobatz was involved in the clinical trials leading to the NINDS report.

Plaintiff counters that the NINDS study, while significant, does not answer or address the question of the use of tPA in her treatment. She points out that her medical condition was not comparable with those used in the NINDS study and that her specific stroke circumstances would have excluded her from participation in the study. Plaintiff argues that the findings of the NINDS study are not definitive of the circumstances presented in her stroke.

Plaintiff asserts that Dr. Lobatz is qualified to testify regarding his opinion in that he is using his training, knowledge, and experience as to the use of tPA for the treatment of patients who present with similar conditions as the Plaintiff. In doing so, he is considering Plaintiff's age, comorbidities, and the type and cause of the stroke. Specifically, the Plaintiff was relatively young and her stroke is believed to have resulted from the use of phentermine, birth control, and tobacco, rather than from vascular disease typical of strokes in older patients.

b. **Dr. John Barr [Docs. 45, 61 & 77]**

Dr. John Barr is a board-certified radiologist and a board-certified neuroradiologist and has likewise practiced medicine in his field, instructed, and conducted peer reviewed research.   He has been designated to offer opinions "…on the timing, location, development and permanent damage caused by the infarcts in Ms. Mountain's brain, as well as the effectiveness of tPA and availability of tPA had there not been a delay in referral of Ms. Mountain to higher level care".  Dr. Barr's report discusses the nature of the radiological studies and the lack of any contraindications for the administration of tPA. Dr. Barr's report states, "[h]ad she been so treated within the accepted 4.5 hour time window, Ms. Mountain would more likely than not have experienced either no or much less severe permanent neurological injuries, such as have rendered her unable to return to her profession and to have impaired her activities of daily living." [Doc 20-5 p. 6].

Defendant challenges this portion of Dr. Barr's report in that it lacks any statement as to the methodology used to reach this opinion.   During questioning by the Plaintiff in Dr. Barr's deposition, Dr. Barr testified that the methodology of reviewing the findings of the NINDS report used by Defendant's expert, Dr. Meurer, is flawed and that the NINDS report supports the opinion of Dr. Barr regarding the effectiveness of tPA treatment.  More specifically, Dr. Barr testified that in reviewing the NINDS study he emphasized the outcomes for those participants in the report who received tPA treatment from 91 minutes to 180 minutes after stroke onset.  He observed, using a one stroke symptom scale, that 45% of patients who received tPA enjoyed a good outcome as compared to only 25% who

received the placebo enjoyed a good outcome. To Dr. Barr this means that those who received treatment were 80% more likely to have a good result.

In spite of the designation, the Plaintiff now asserts that it will not seek to have Dr. Barr testify regarding causation as stated in *Plaintiff's Response to Defendant's F.R.E. 702/Daubert Motion* [Doc 61 p.3]:

> Dr. Barr is a board-certified neuroradiologist retained by Plaintiff to evaluate Ms. Mountain's radiological films and medical records and offer opinions on the timing, location, development and permanent damage caused by the infarcts in Ms. Mountain's brain, as well as the availability of tPA had there not been a delay in referral of Ms. Mountain to higher level care. Plaintiff does not intend to seek testimony from Dr. Barr regarding whether tPA would have helped Ms. Mountain had she been able to receive it.

This renders any further discussion regarding Defendant's *Daubert* motion unnecessary, and Dr. Barr will not be allowed to testify regarding whether tPA would have benefited Plaintiff.

### c. Dr. Crozier [Docs. 44, 66 & 78]

Dr. Alana Cozier was Plaintiff's treating board-certified neurologist at the Wyoming Medical Center. Dr. Cozier is designated to testify as to several matters arising from her treatment and care of Plaintiff, including that "…the administration of tPA would have been a viable option and would have help to resolve the infarct and more likely than not have prevented the permanent neurological damage." [Doc 20 p.15]. She is listed as a treating provider and no report was provided with the designation.

Defendant objects to the designation on the basis that it fails to provide detail as to the doctor's opinions, but rather only a list of topics of opinions. Defendant argues that

such disclosure does not comply with the requirements of Rule 26(a)(2)(C). This objection is subject to a separate motion filed by Defendant and will be addressed below.

Defendant seeks to strike Dr. Cozier's testimony pursuant to *Daubert*. In many ways Defendant's motion mirrors its motion regarding Dr. Lobatz, but also focuses on Dr. Cozier's lack of a report. The lack of report means that Dr. Cozier has not provided a formal opinion, nor the basis and support of such opinion. As such the Court is unable to address the *Daubert* factors to test the reliability of Dr. Cozier's opinions.

As a non-retained expert designation, Dr. Cozier's opinions are not set forth in the same detail as those of Dr. Lobatz and do not include a discussion of the basis for her opinions regarding the efficacy of tPA treatment for the Plaintiff. The doctor's medical records reference that Plaintiff "could have" been helped by administration of tPA [Doc. 66-2 p. 11]. In addition, Dr. Cozier expanded upon her opinions in a July 6, 2020 letter [Doc. 33 p.3] to Dr. Lobatz in regard to Defendant's expert designation and an affidavit of August 14, 2020 [Doc 66-10].

### 3. *Daubert* Discussion

Defendant seeks to exclude the testimony of each of the above listed witnesses on the bases that the testimony does not pass the threshold as set forth in Rule 702, *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993), and its progeny. Federal Rule of Evidence 702 reads:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)  the testimony is based on sufficient facts or data;

(c)  the testimony is the product of reliable principles and methods; and

(d)  the expert has reliably applied the principles and methods to the facts of the case.

The proponent of the expert testimony bears the burden of establishing the foundational requirements of Rule 702. *Kumho Tire Co. v. Carmichael*, at 147.

The first requirement of Rule 702 is that the expert be qualified. From the information provided each of Plaintiff's designated experts are board-certified medical professionals within their respective fields of neurology. Defendant does not challenge their basic qualifications. Additionally, the testimony must be helpful to the trier of fact. Other than concerns regarding reliability there is little question that expert testimony regarding the treatment of Plaintiff and the impact on her recovery is useful to the trier of fact in addressing the merits of Plaintiff's case[2]. We now turn to *Daubert*.

*Daubert* takes a three-pronged approach to the evaluation of expert testimony. Those are "validity" or "reliability" of the evidence; degree of fit to the facts of the case; and risk of confusion or misleading jury. *Federal Evidence*, Mueller and Kirkpatrick, 4th Edition, Vol. 3, §7:10 p. 781. Addressing the third factor first and as noted above, the lack of risk of confusion to the jury is a substantial factor in this case favoring admission of the testimony and impacting this Court's review of the first two prongs. The reliability

---

[2] In so far as Defendant is arguing the expert opinions are not helpful to the trier of fact in that it does not comply with the proper standards of causation, such arguments will be addressed under *Daubert* standards.

of an expert's testimony is ultimately the task for the trier of fact, which in this case is the Court. As such, only expert testimony which clearly violates the *Daubert* standard should be stricken at this point.

Reliability is the next hurdle for Plaintiff and the primary challenge of Defendant to these experts' efforts to testify as to the issue of causation. "To be reliable under *Daubert* an expert's scientific testimony must be based on scientific knowledge, which 'implies a ground in the methods and procedures of science' based on actual knowledge, not 'subjective belief or unsupported speculation.'" *Dodge v. Cotter Corp.,* 328 F.3d 1212, 1222 (10th Cir. 2003). In this case it is not contested that tPA is the proper treatment in many stroke circumstances and that it has been shown to be an effective treatment under the proper circumstances. The use of tPA was approved by the FDA in large part due to the results of the NINDS study which showed that there was a better rate of recovery for specific stroke victims following the timely administration of tPA. For purposes of these motions it is not contested that Plaintiff was denied such treatment as a result of the alleged negligence of Defendant. Both Drs. Lobatz and Crozier are treating neurologist who are familiar with the NINDS report and other peer review literature regarding stroke treatment with tPA. In addition, they both have years of professional practice as neurologists in the treatment of strokes, with and without tPA.

Defendant's expert, Dr. Meurer, is not a neurologist, but is a board-certified emergency room physician with extensive experience in the treatment of strokes. Dr. Meurer undertook a review of clinical trials based upon his opinion as to the nature of the Plaintiff's stroke. In doing so he had to cross reference a number of trials and studies in

that the subject trials did not specifically fit the Plaintiff's diagnosis and circumstances. There appears to be no precise study which fits the Plaintiff's circumstances and thus Dr. Meurer undertook to extrapolate the existing studies to Plaintiff's situation, which involved both subjective and objective analysis. Dr. Meurer also looked to the specific sequala noted with Plaintiff and the information provided by the prior trials.

> Finally, I searched the literature extensively for evidence that tPA is helpful with many of the late effects of stroke [Plainitff] alleges she is experiencing (tremor, pseudobulbar affect, etc.) I found no evidence in the published literature that tPA protects against these effects either. Finally, very few patients with mild, isolated cerebellar stroke have been included in rigorous, well controlled trials comparing tPA to placebo. In fact, the NINDS trial specifically excluded patients with isolated ataxia. This represents an important additional reason it is not medically probable that tPA would have been beneficial for her.
> [Doc. 28-1 p. 17]

In doing so Dr. Meurer is of the opinion that the timely treatment with tPA would not have improved significantly improved Plaintiff's outcome.

Drs. Lobatz and Crozier approach the problem from a different perspective. They look to the unique circumstances of Plaintiff's stroke, and combine it with their knowledge, training, and experience in the treatment of strokes to provide their opinion regarding the potential for Plaintiff's recovery with timely tPA treatment. In doing so, they view the literature differently than Dr. Meurer and are both of the opinion that had Plaintiff received timely tPA treatment that she would "more likely than not" have been able to return to work.

Neither method is exclusive nor wrong in the Court's opinion. Under Defendant's view of the evidence there is no medical studies which support that Plaintiff would have

had a complete recovery, while agreeing there is no study directly on point with Plaintiff's circumstances, and as such there can be no finding of reliability. Its interpretation of the NINDS report results in the opinion that Plaintiff was not injured to a medical degree of probability by the failure to receive tPA. Plaintiff's experts rely upon the studies regarding tPA, but with much greater emphasis on their experience with the treatment of strokes. Specifically, they assert that the Plaintiff was young for a stroke victim, "caused by a coagulable state likely due to the combination of the use of phentermine, estrogen eluting IUD (NuvaRing), hypertension, and tobacco use. Her arteries on CTA are normal. She does not suffer from overt longstanding atherosclerosis. In my experience the use of a clot busting drug (rTPA) in this setting is likely to be more effective versus an artery that is damaged/hardened or closed by a lifetime of issues such as severe hypertension, hyperlipidemia, and long-term tobacco abuse." [Doc. 63-6 p.4].

Taken to the extreme, both sides have potential problems. Under Defendant's view there can be no medical causation testimony absent a study on point which would make admissibility the exception rather than the rule.

> Given the liberal thrust of the Federal Rules of Evidence, the flexible nature of the *Daubert* inquiry, and the proper roles of the judge and the jury in evaluating the ultimate credibility of an expert's opinion, we do not believe that a medical expert must always cite published studies on general causation in order to reliably conclude that a particular object caused a particular illness. To so hold would doom from the outset all cases in which the state of the research on the specific ailment or on the alleged causal agent was in its early stages, and would effectively resurrect a *Frye*-like bright line standard, not by requiring that a methodology be "generally accepted" but by excluding expert testimony not backed by published (and presumably peer-reviewed) studies.

*Heller v. Shaw Industries, Inc.*, 167 F.3d 146, 155 (3rd Cir. 1999).

On the other hand, the simple qualification of an expert alone is not enough to open the door to all manners of opinions. "Trust me, I am an expert" will not carry the day. Nevertheless, it is permissible for an expert to draw upon his/her experience and *Daubert* did not alter this principal as noted in the Advisory Committee Notes to Rule 702.

> Nothing in this amendment is intended to suggest that experience alone—or experience in conjunction with other knowledge, skill training or education—may not provide a sufficient foundation for expert testimony. To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. … If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more that simply "taking the expert's word for it."

> Advisory Committee Notes, 2000 Amendments.

As noted, Drs. Lobatz and Cozier seek to opine that Defendant's failure to diagnose and obtain proper treatment for Plaintiff was a substantial factor in causing the Plaintiff's injuries. Admission of such expert testimony requires the court to find that the opinions are based on "good grounds". *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 743 (3rd Cir. 1994). The opinions must be bases on methods and procedures of science, and if so, are admissible regardless of the court's belief in the correctness of the opinions.

Defendant's challenge is based significantly on the findings of the NINDS report. Plaintiff's experts acknowledge the importance of the NINDS report but assert that the report is not definitive in regard to the Plaintiff's medical condition of April 27, 2016. In doing so the Plaintiff relies in large part upon her treating neurologist's and her retained

14

neurologist's experiences and knowledge from using tPA in the treatment of similarly situated patients during the course of the medical practices, as well as other more recent research.   Dr. Barr, who Plaintiff asserts she will not call regarding the issue of causation, looked at the relative verses actual chances of recovery based upon his reading of the NINDS report.  This approach has been rejected by some courts but need not be discussed herein due to Plaintiff's withdrawal of any such testimony.   See *Samaan v. St. Joseph Hospital*, 670 F.3rd 21 (1st Cir. 2012), *Young v. Memorial Hermann Hospital System*, 573 F.3d 233 (2009) and *Smith v. Bubak*, 643 F.3rd 1137 (8th Cir. 2011)[3].

This is not a circumstance where the experts should be struck on the basis of *Daubert*.  All the medical causation experts are relying upon their expertise and on the type of information generally relied upon by medical care providers.  There is no junk science here, but rather experts looking upon the same basis of information and reaching differing conclusions.  This is not a case where someone wants to testify that walnut hulls cures cancer or that excessive exposure to moon beams leads to mental illness. Rather, there is a recognized and studied treatment which has shown therapeutic benefits and the issue is the degree of benefit expected in a particular scenario. This is a classic case where the truth is to be divulged within the presentation and cross examination of the expert. *Daubert* does not take sides on professional differences.   The universe of knowledge

---

[3] It should be noted that these cases considered the proffered expert testimony in light of the required standard of proof for causation of damages.  In Maine, Texas, and South Dakota it must be shown that the injuries were "more likely than not" a result of the negligence rather than Wyoming's "substantial factor" causation standard as set forth in § 431 Restatement 2d Torts.

regarding tPA is far broader than that found within the NINDS report and that report is but one aspect of the body of knowledge which shapes this conflict in opinions. Defendant's motion to strike Drs. Lobatz and Crozier pursuant to Rule 702 are denied. As to Dr. Barr, the motion is granted as it appears to be conceded by Plaintiff's concession that the doctor will not testify as to causation based upon the efficacy of tPA.

**4. Rebuttal Testimony**

### a. Dr. Lobatz [Docs. 46, 64 & 82]

Defendant seeks to strike the rebuttal designation of Dr. Lobatz [Doc. 33] on the grounds that it is not proper rebuttal and should have been asserted in Dr. Lobatz's original designation. After reviewing the designation, the Court does not see the designation as improper. It was timely filed pursuant to Fed. R. Civ. P. 26(a)(2)(D) and specifically addresses the issue which is the subject of both Dr. Lobatz's original designation and Dr. Meurer's report. Dr. Lobatz provides an opposing view to Dr. Meurer's opinions. These opinions are properly a subject for cross-examination at trial and not for pretrial motion.

### b. Dr. Barr [Docs. 47, 62 & 80]

Defendant also seeks to strike the "rebuttal" testimony of Dr. Barr presented during his deposition of July 17, 2020. At the conclusion of the questioning of Dr. Barr, Plaintiff's attorney questioned Dr. Barr regarding his responses to Dr. Meurer's report. This is not a proper procedure to amend a designation. "[T]his Court finds that Fed. R. Civ. P. 26 does not allow parties to cure deficient expert reports by supplementing them with later deposition testimony. A deficient expert report should be met with a motion to supplement, not a notice of deposition." *Robinson v. Flowserve*, 2015 WL 10714176. In

so far as Dr. Barr's testimony attempts to cure a deficient expert designation, it is improper. Dr. Barr's testimony is clearly in rebuttal to the opinions of Dr. Meurer. Dr. Barr provided a conclusionary opinion in his report that the Plaintiff's treatment with tPA would more likely than not avoided or reduced her neurological injuries. His deposition testimony is his interpretation of the NINDS report in direct response to Dr. Meurer. This motion is effectively conceded by Plaintiff in her statement that Dr. Barr will not testify regarding causal relationship between tPA and Plaintiff's recovery. This motion is granted.

**5.  Defendant's Motion to Strike Rule 26(a)(2)(C) Witnesses [Docs. 48, 65 & 84]**

Defendant asserts that Plaintiff's designation of non-retained experts pursuant to Fed. R. Civ. P. 26(a)(2)(C) is improper and insufficient. The designated individuals are treating medical providers for Plaintiff. Defendant takes primary exception to the designation of Dr. Cozier. Dr. Cozier was Plaintiff's primary treating neurologist during her hospitalization and subsequent release. There is a great deal of discussion regarding the differences between treating and non-retained experts. This is not defined by the title of the expert, but rather the nature of their testimony. If a treating provider attempts to extend their testimony to matters beyond their treatment, they must be so designated. Rule 26(a)(2)(C) reads:

> Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:
> (i)  the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702,703, or 705; and
> (ii)  a summary of the facts and opinions to which the witness is expected to testify.

Plaintiff's designation of Dr. Cozier covers many topics, most relating to her treatment and opinions regarding treatment options [Doc. 20 p. 14-15]. The designation does more than simply reference medical records, nevertheless it is not a model of a proper designation of a treating physician. While it clearly delineates some of the doctor's opinion, it is rather vague as to her opinions regarding limitations and disability of Plaintiff. The Court will limit such testimony to the period of time in which Dr. Cozier was treating Plaintiff and may be supported by statements in her medical records. The designation also states that Dr. Cozier will testify regarding her conversations with the experts and "her general agreement with their expert recommendations and her concurrence with their opinions." If a medical provider is designated to testify in accordance with their medical reports, they may not expand their testimony beyond those records, such as prognosis, unless such testimony properly designated.

> As an initial matter, Defendants argue Plaintiff's treating physicians may only testify as to factual matters and the substance of their own medical records. Plaintiff does not oppose this argument, and the Court agrees that as non-retained experts, the testimony of Plaintiff's treating physicians cannot extend beyond their own observations, treatment, and patient diagnosis. *See Iverson v. Sentinel Insurance Company Ltd.*, No. 13-CV-237-F, 2014 WL 11498046, at *4 (D. Wyo. Apr. 25, 2014). Additionally, Plaintiff's treating physicians cannot review the records of another healthcare provider to formulate opinions as to the appropriateness of care. *Id.* However, this ruling is not intended to preclude Plaintiff's treating physicians from testifying about the medical records of another provider when the physicians consulted such records in the course of their treatment or if such records are of the type reasonably relied upon by the treating physician in forming their opinions. *See* FED. R. EVID. 703; *Starling v. Union Pacific R. Co.*, 203 F.R.D. 468, 480–81 (D. Kan. 2001).
>
> *Infiesta-Montano v. Cocca Development Ltd.*, 2019 WL 7630627 (D.Wyo June 7, 2019)

Dr. Crozier's designation that she will testify as to her concurrence with retained experts is not a matter that arose during her treatment of Plaintiff and as such is not a proper subject of testimony for a non-retained expert absent a designation in compliance with Rule 26(a)(2)(C), which this isn't.

Dr. Crozier did appear to form opinions regarding the efficacy of tPA for Plaintiff during her actual treatment. Dr. Cozier stated in her contemporaneous medical records that "[w]e could have helped her earlier by giving her tissue plasminogen activator (TPA)." [Doc 66-2 p 11]. As such, Defendant was on notice from the beginning of this case that Dr. Cozier believed that Plaintiff would have benefited from administration of tPA. In that this statement is included within Dr. Cozier records and addressed in her designation she will be allowed to testify as to that opinion and the basis of that opinion **at the time it was rendered**. She will not be allowed to testify as to subsequent research or information acquired after the time in which she was Plaintiff's medical care provider. That would shift her opinions from those of a treating physician to that of a retained expert, and she was not designated as such. *Iversen v. Sentinel Ins. Co.*, 13-CV-237-F, 2014 WL 11498046 (D. Wyo. April 25, 2014); *Barack v. Am. Honda Motor Co.*, 293 F.R.D. 106, 109 (D. Conn 2013). She will be further barred from testify as to Plaintiff's future prognosis, except as such opinions can be found within her medical records provided in discovery. She may testify as to Plaintiff's condition upon her last examination and the Plaintiff's ability to perform specific functions at the time of the examination and the doctor's prognosis at that time. Dr. Cozier's letter of July 6, 2020 and her affidavit August

14, 2020 are not part of her actual medical records and as such not part of her designated testimony. This letter was written long after Dr. Cozier had ceased to be Plaintiff's medical care provider. The degree upon which retained experts may rely upon the information in this letter and affidavit will be an issue for the Court to address during trial.

Defendant also objects to Dr. Crozier's designation to the degree it relies upon reference to medical records. It is recognized that a treating non-retained medical expert may not simply rely upon a reference to medical records. *Infiesta-Montano v. Cocca Development Ltd.*, 2019 WL 7630627 p. 2 (D. Wyo. June 7, 2019). Rule 26(a)(2)(c) requires that a non-retained expert designation include not just the subject matter, but also a summary of the facts and opinions of expected testimony. *Energy Drilling, LLC v. Pacific Energy and Mining Co.*, 2016 WL 3509329 p. 5 (D. Wyo. April 1, 2016). In all other aspects the designation of Dr. Cozier is more than just a referral to medical records and complies with Rule 26(a)(2)(C) and provides adequate notice to Defendant as to the scope of Dr. Crozier's testimony. Defendant's motion is granted in part and denied in part.

Defendant generally objects to all remaining non-retained experts designated. While such designations are very general in nature, the Court does not choose to strike the witnesses. These witnesses are primarily fact witnesses regarding Plaintiff's medical care as documented in the medical records which by all accounts have been provided in discovery. There should be no surprise to Defendant, and if any such witness is called and asked concerning topics beyond the medical records, it can be dealt with by timely objection at trial. Such testimony, on the rare occasions such witnesses are called, will

not disrupt the trial and no bad faith is detected by the Court. Defendant's motion is denied as to remaining witnesses.

### 6. Duplicate Testimony [Docs, 49, 67 & 87]

Defendant further objects to the duplicative nature of the expert testimony [Doc 49]. Clearly the Court has the discretion to address duplicative testimony. In addition, it does appear that there is overlap of opinions between the expert doctors. This matter has been generally resolved as a result of Plaintiff's clarification as to the scope of Dr. Barr's testimony. In that Drs. Lobatz and Cozier are testifying in differing roles, their testimony will not be considered duplicative, even as they testify regarding their observations and opinions as neurologist. This matter of duplicative testimony is best addressed in the course of the trial. The Defendant's motion is denied without prejudice.


**IT IS HEREBY ORDERED.**

Defendant's F.R.E./*Daubert* Motion—Dr. Michael Lobatz [Doc. 43] is **Denied**;

Defendant's F.R.E./*Daubert* Motion—Dr. Alana Crozier [Doc. 44] is **Denied**;

Defendant's F.R.E./*Daubert* Motion—Dr. John Barr [Doc. 45] is **Granted;**

Defendant's Motion to Strike Dr. Michael Lobatz's Improper Rebuttal Testimony [Doc. 46] is **Denied;**

Defendant's Motion to Strike Dr. John Barr's Improper Rebuttal Testimony [Doc. 47] is **Granted;**

Defendant's Motion to Strike Plaintiff's Rule 26(a)(2)(C) Witnesses [Doc. 48] is **Granted in Part and Denied in Part** as to Dr. Crozier and **Denied** as to all other witnesses; and

Defendant's Motion to Strike Duplicative Testimony [Doc. 49] is **Denied Without Prejudice.**

Dated this 11th day of September, 2020.

_____
MARK L. CARMAN
UNITED STATES MAGISTRATE JUDGE